UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CONSWELLA A ROBINSON**      **CASE NO.  2:20-CV-01128**

**VERSUS**      **JUDGE JAMES D. CAIN, JR.**

**SERVICE COMPANIES INC**      **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is "Defendant's Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6)" (Doc. 5) wherein The Service Companies, Inc. ("TSC") moves to dismiss Plaintiff Conswella A. Robinson's Title VII claims that are unexhausted and Title VII and Section 1981 retaliation claims. TSC maintains that Plaintiff failed to administratively exhaust all of her claims including those concerning a complaint allegedly made by her supervisor.  TSC also moves to dismiss Plaintiff's retaliation claims under Title VII and Section 1981.  TSC maintains that Plaintiff failed to properly allege that she engaged in protected activity, an essential element of that claim.

## ALLEGATIONS

Plaintiff brings this lawsuit to redress the deprivation of rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of  1991 ("Title VII") and 42 U.S.C. § 1981,  as amended by the Civil Rights Act of 1991 ("Section 1981").[1] Plaintiff asserts the following allegations in her complaint, as amended.

---

[1] Doc. 4, ¶ 1.

Plaintiff makes the following allegations in her Amended Complaint: Defendant, TSC, hired Plaintiff, Conswella Robinson, an African American, on or about July 29, 2016, as a driver/dispatcher in the transportation department.[2] The employees who worked in the transportation department transported employees of the L'Auberge Casino Resort, the Golden Nugget Casino Resort and Delta Downs Racetrack Casino Hotel, via vans and/or shuttle buses, to and from their homes to work at the casinos, as well as for shopping on off days.[3]

Plaintiff alleges that the vast majority of TSC's employees were African American, and that the work environment was not pleasant.[4]

On or about 2014, TSC hired Amanda Carriere, a Caucasian, as a Human Resource associate in the transportation department.[5] Carriere talked about African Americans' hairstyles negatively and spoke negatively about the manner in which African Americans dressed. Additionally, Carriere directed non-African American employees to make false accusations against African American employees in attempts to get the African American employees disciplined.[6] Carriere's negative treatment was directed only to African Americans.[7] Carriere made such statements as "she could not stand those people," and inquired as to how the non-African Americans like working with "those people." She also referred to African Americans as "monkeys."[8]

---

[2] Doc. 4. ¶ 11.
[3] Id. ¶¶ 12 and 14.
[4] Id. ¶ 16.
[5] Id. ¶ 17.
[6] Id. ¶ 18.
[7] Id. ¶ 19.
[8] Id. ¶ 20.

Plaintiff alleges that Carriere created an environment that was hostile and unpleasant for African Americans, including false reports against African Americans which caused African American drivers to be written up or otherwise reprimanded, and in some cases caused the drivers to lose their jobs.[9]

On or about June 10, 2016, when a casino employee learned of an opening for a driver in the transportation department and asked another driver how to apply for the position, Carriere had the other driver, who was also African American, written up for directing the casino employee to contact Human Resources.[10] Carriere falsely alleged that the other driver had revealed confidential information and wrote up the driver even though there was no confidential company information disclosed.[11]

Plaintiff complains that there were multiple other situations where Carriere directed non-African Americans in the transportation department to file false reports against African American drivers.[12] In addition, Carriere had African Americans written up for offenses or terminated when Caucasian drivers, who committed the same offense, were not written up or terminated.[13] Plaintiff alleges that senior management not only condoned the discriminatory conduct against Plaintiff and other African American drivers but encouraged such conduct.[14]

---

[9] Id. ¶ 21.
[10] Id. ¶ 22.
[11] Id. ¶ 23.
[12] Id. ¶ 24.
[13] Id. ¶ 25.
[14] Id. ¶ 27.

On or about August 1, 2016, an incident occurred in which a Caucasian employee referred to an African American employee as a "nigger." The incident was reported to Director of Human Resources Leslie Oaks; she failed to respond or to take action.[15] The incident was reported to Carriere, but she refused to take any corrective action against the Caucasian employee.[16]

The drivers' supervisor reached out and complained to multiple members of senior management;[17] she also requested a meeting to address the use of derogatory and disparaging words toward the African American drivers.[18] Senior management completely failed to respond to the complaint.[19]

Carriere was allowed to continue harassing and demoralizing African American employees, which created an environment whereby other non-African American employees could hurl racial epithets without fear of reprisal from the local management, or corrective actions from senior management.[20]

Because Carriere's treatment of African American drivers intensified, several drivers, including Plaintiff held a meeting concerning the discriminatory conduct and decided to draft a letter of complaint to issue to senior management regarding Carriere's treatment of African American drivers. The letter was signed on or about August 17, 2016, by Plaintiff, the drivers' supervisor, and several other drivers.[21] The drivers' supervisor

---

[15] Id. ¶ 28 and 29.
[16] Id. ¶ 30.
[17] Keith Gaines (Director of Operations), Leslie Oaks (Director, Human Resources) and Anjuli Ganguly (Director, Southern Region, Human Resources).
[18] Id. ¶ 31.
[19] Id. ¶ 32.
[20] Id. ¶ 33.
[21] Id. ¶¶ 35, 36, 37.

emailed the letter to senior management Keith Gaines,[22] Leslie Oaks,[23] Anjuli Ganguly,[24] and Erica Monteverdi[25] on or about August 17, 2016.[26] Senior management failed to respond to the email or letter.[27]

On or about August 26, 2016, less than two (2) weeks after the letter was sent to management, management suddenly conducted an "audit."[28] Throughout Plaintiff's entire tenure with TSC, the company had never conducted an "audit" of the transportation department.[29]

Plaintiff alleges that the "audit" was not actually an audit, but was a ruse designed to disguise TSC's real intent--to terminate Plaintiff for having signed the letter complaining of the treatment Plaintiff and other drivers endured at the company.[30]

On September 1, 2016, during the "audit," Stephanie Legier (HR Associate) terminated Plaintiff and advised her that her shift was no longer available.[31] Plaintiff had been hired just a little more than a month before by TSC because there was a need for drivers.[32] Legier advised Plaintiff that she was being terminated because she was the "last one hired, first one fired."[33]

---

[22] Director of Operations.
[23] Director, Human Resources.
[24] Director. Southern Region Human Resources.
[25] Manager, Human Resources.
[26] Id. ¶ 38.
[27] Id. ¶ 39.
[28] Id. ¶ 41.
[29] Id. ¶ 42.
[30] Id. ¶ 43.
[31] Id. ¶ 44.
[32] Id. ¶ 45.
[33] Id. ¶ 46.

On August 22, 2016, when the Director of Human Resources, Oaks, learned of the meeting of the drivers, Oaks held a meeting with Carrier and another Caucasian employee and informed them of the drivers' complaint.[34] Plaintiff alleges that Oaks "stated that she would have someone in the transportation department fire all drivers and the supervisor before the end of September 2016.[35] Shortly, thereafter, the "audit" was instituted and the supervisor and other African American drivers who signed the letter/complaint were terminated.[36]

Plaintiff alleges that she became aware of email communications between Oaks, Carriere and Ganguly wherein TSC had determined that it would terminate Plaintiff and other African American drivers who had lodged a complaint. Some of these communications celebrated the fact that the ploy Oaks had discussed in her August 22, 2016 meeting with Carriere and the other Caucasian employee had been successful.[37]

The communications allegedly reveal that Carriere proclaimed "We did it" and Oaks wrote, "Hey, Yes, Anjuli called me. I'm glad those niggers are gone.  We have to work on a few more before September 15th. I told you I would do all I can to get them out of there."[38] Ganguly responded, "You guys are so crazy! I can't stand those niggers! Thanks to Victor[.]"[39] By the end of September 2016, several other drivers who had executed the August 17, 2016 letter sent to management were terminated.[40]

---

[34] Id. ¶ ¶ 50-53.
[35] Id. ¶ 54.
[36] Id. ¶ 55.
[37] Id. ¶ ¶ 57 and 58.
[38] Id. ¶ ¶ 58 and 59.
[39] Id. ¶ 60.
[40] Id. ¶ 47.

## **RULE 12(b)(6) STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point

necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955.

## **LAW AND ANALYSIS**

Plaintiff filed an EEOC Charge (the "Charge") on April 25, 2017, against TSC which alleged race discrimination and retaliation beginning on August 1, 2016, allegedly lasting until September 1, 2016.[41] Plaintiff filed the instant Complaint on August 29, 2020, and an Amended Complaint on September 12, 2020.[42] In the Amended Complaint, Plaintiff alleged race discrimination and retaliation under Title VII and 42 U.S.C. § 1981.

---

[41] Defendant's exhibit A, Doc. 4-1.
[42] Docs. 1 and 4, respectively.

TSC moves to dismiss any Title VII claims that were not exhausted and Plaintiff's retaliation claims under Title VII and § 1981.

*Exhausted claims*

"[A] court may entertain a Title VII lawsuit only if the aggrieved party has (1) exhausted his or her administrative remedies, and (2) has filed suit within the time permitted after receiving a 'notice of right to sue.'" *Taylor v. Books-A-Million,* 296 F.3d 376, 378-79 (5th Cir. 2002). Exhaustion of administrative remedies is a prerequisite to filing suit under the federal discrimination statutes. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995). Exhaustion occurs when a complainant timely files a charge of discrimination with the EEOC and receives a notice of right to sue. 42 U.S.C. § § 2000e -5(e)(f); see also *Taylor,* 296 F.3d at 379. To file suit under Title VII, a plaintiff must first file a charge with the EEOC within a certain time period. [43] Courts should not condone lawsuits that exceed the scope of EEOC exhaustion. *McClain v Lufkin Industries, Inc.,* 519 F.3d 264, 274 (5th Cir. 2008).

EEOC complaints are broadly construed, but only in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970)). Courts may "look slightly beyond [the Charge's] four corners and to its substance rather than its label." Allegations in a complaint that allege grievances not raised at the

---

[43] In Louisiana, that time period is 300 days. See *Martin v. Winn-Dixie Louisiana, Inc.,* 132 F.Supp.3d 794, 915 (M.D. La. 2015).

EEOC will be dismissed. See *Id.* at 274 (citing *Pacheco v. Mineta,* 448 F.3d 783 (5th Cir. 2006)).

TSC contends that Plaintiff's alleged claims of race discrimination on or about August 10, 2016, are outside the scope of the EEOC charge. Specifically, Plaintiff alleges in her Amended Complaint that an incident occurred wherein a Caucasian employee referred to an African American employee (not Plaintiff) as a "nigger."[44] Plaintiff further alleges that her supervisor reported the incident to the Director of Human Resources who failed to respond.[45] The supervisor then reported the incident to Carriere—the local HR representative--who refused to take any corrective action against the Caucasian employee.[46] Plaintiff's supervisor then reached out to multiple members of senior management concerning the incident and requested a meeting; again, senior management failed to respond.[47]

In her EEOC Charge which alleges race discrimination and retaliation,[48] Plaintiff complains that she was harassed by Amanda Carriere, a Human Resources associate. She further states that after she and numerous other employees wrote a letter complaining about the treatment of black drivers by Amanda Carriere, she was told by Stephanie that her shift was no longer available.[49] Plaintiff also complains that within 9 days of signing the letter,

---

[44] Amended Complaint, ¶ 27, Doc. 4.
[45] Id. ¶ 28.
[46] Id. ¶ 29.
[47] Id. ¶¶ 30 and 31.
[48] Doc. 4-1.
[49] Doc. 4-1.

at least one-half of the employees who signed the letter were either fired or had their shifts taken away and were given shifts that were impossible to work.[50]

The EEOC Charge indicates race discrimination and retaliation. The Court finds that allegations made in the Amended Complaint grow out of the EEOC charge and therefore, Plaintiff has exhausted her administrative remedies as to racial discrimination under Title VII.

*Protected activity*

To assert a Title VII claim, a plaintiff must show (1) that the plaintiff engaged in protected activity under Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004). The causation requirement for a Title VII retaliation claim requires the heightened "but-for" causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517 (2013). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir. 2002).

TSC maintains that Plaintiff has not stated a plausible claim of relief for retaliation under Title VII. Specifically, TSC argues that Plaintiff has not properly alleged that she engaged in any statutorily protected activity. TSC remarks that the "Driver Letter" signed by numerous employees, including Plaintiff, and presented to senior management did not

---

[50] Id.

reference any unlawful employment practice under Title VII. Thus, it does not constitute protected activity. See *e.g. Tratree v. BP N. Am. Pipelines, Inc.,* 277 Fed. Appx. 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris-Childs v. Medco Health Solutions, Inc.,* 169 Fed. Appx. 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claims where plaintiff never "specifically complained of race or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.,* 150 Fed. Appx. 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in protected activity, as his grievance did not oppose race or protest racial discrimination or any other unlawful employment practice under Title VII.)"; see also *Evans v. Tex. Dep't of Transp.,* 547 F.Supp.2d 626, 654 (E.D.Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity. Specifically, although Evans complained of a purportedly hostile work environment, at no time did she suggest that [the conduct at issue] was related to Evans' race, sex, . . . or other protected characteristic protected by Title VII."). The letter provides as follows:

> Dear Human Resource Director:
>
> I am writing to you today to discuss some aspects about the Transportation Department job that has become unbearable in recent months. Most notably, Amanda Carrier's behavior in the office has been extremely uncomfortable and unpleasant. She has been unreasonably critical about the drivers work, she has harassed them about their appearance, taking their lunch break as they're entitle [sic] to, whenever a driver picking up riders at the casino and she's there, she will approach them and asked them why are they sitting in the van. If there is an issue with the drivers or dispatchers, she doesn't address it to the Supervisor or the Assistant Supervisor; she goes above them and reports it to HR director(s). We as the Transportation Department think it's unfair to us as employees to allow this behavior to continue in this matter.

> All the drivers as well as the dispatchers, feel the same way about Amanda, because they too have expressed their discomfort. Please contact us along with our Supervisor and Assistant Supervisor as soon as possible to let us know how this challenging situation can be resolved. I would be happy to set up a time to meet with you in persons or have a conference call. Thank you very much for your prompt attention to this important issue.[51]

The driver letter which is signed by thirteen (13) TSC employees generally complains about Carriere's behavior which is "extremely uncomfortable and unpleasant."[52] The letter notes specific complaints, but does not by itself, appear to have a racial undertone. The letter does request a meeting with senior management to discuss the drivers' expressed discomfort. The letter was emailed to senior management (as noted above) on August 17, 2016, which is about one week after Plaintiff complained to senior management and human resources of alleged derogatory and disparaging words spoken to the African American drivers. Nine (9) days later, an "audit" was conducted resulting in Plaintiff and several other African American drivers who had signed the letter being terminated.

A good faith complaint to a human resource representative or management officer regarding retaliation and discrimination is protected activity. *Rodriguez v. Wal-Mart Stores, Inc.,* 540 Fed. Appx. 322, 328 (5th Cir. 2013) (*per curiam)* (*"*An employee who files an internal complaint of discrimination engages in a protected activity." *(*Citing *Fierros v. Texas Dep't of Health,*274 F.3d 187, 194 (5th Cir. 2001).

---

[51] Doc. 5-2.
[52] Id.

The Court finds that the letter coupled with the previous reports and/or complaints made by Plaintiff to senior management and Human Resources is sufficient to state a plausible claim for relief for retaliation.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss will be denied.

**THUS DONE AND SIGNED** in Chambers on this 23rd day of February, 2021.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**